## In re DISTRICT MEMORIAL HOSPITAL OF, SOUTHWESTERN NORTH CAROLINA, INC., Debtor.

### No. 00–20069.

United States Bankruptcy Court, W.D. North Carolina.

Feb. 8, 2002.

Maureen Demarest Murray, Helms, Mulliss & Moore, LLP, Greensboro, NC, Robert M. Pitts, Pitts, Hay & Hugenschmidt, P.C. Asheville, NC, T. Bentley Leonard, T. Bentley Leonard, PLLC, Asheville, NC, for Debtor.

John L. Bramlett, Charlotte, NC, U.S. Trustee.

## ORDER ALLOWING RECOUPMENT OF MEDICAID OVERPAYMENTS BY THE NORTH CAROLINA DE- PARTMENT OF HEALTH AND HUMAN SERVICES

GEORGE R. HODGES, Chief Judge.

This matter is before the court on Notice of Intent to Recoup Medicaid Overpayments filed by the North Carolina Department of Health and Human Services. For the reasons stated below, the court has concluded that the State is permitted to recoup pre-petition Medicaid overpayments.

*Jurisdiction*

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter came before the court after proper notice, and all parties are properly before the court. The parties each filed memoranda supporting their positions. The court has considered those papers and the arguments of counsel at a hearing on January 23, 2002.

*Factual Background*

3. The debtor in this case, District Memorial Hospital, filed a Chapter 11 reorganization proceeding on June 6, 2000.

4. The debtor is a charitable, non-stock, non-profit hospital in Andrews, North Carolina. Since filing its bankruptcy petition, the debtor has continued to operate in the ordinary course of business pursuant to 11 U.S.C. §§ 1107 and 1108.

5. On November 30, 2001, the debtor and Murphy Medical Center, Inc., an unsecured creditor and a party in interest, jointly filed a First Amended Disclosure Statement and Plan. The court entered an order on December 12, 2001, confirming this Plan of Reorganization, which in essence provides for purchase of the debtor's assets by Murphy Medical Center and continuation of certain hospital operations at the Andrews facility.

6. The North Carolina Department of Health and Human Services, Division of Medical Assistance ("DMA") is the State agency responsible for administering and managing North Carolina's Medicaid Plan and Program. N.C. Gen. Stat. § 108A–25 (2001). The purpose of the Medicaid Program is to provide funding for individuals "whose income and resources are insufficient to meet the cost of necessary medical services." 42 U.S.C.A. § 1396 (West 1992 & Supp.2001). The Program is funded with federal, state, and county dollars. 42 U.S.C.A. § 1396; N.C. Gen. Stat. § 108A–54 (2001).

7. The debtor provided medical services to Medicaid recipients pursuant to a Medicaid Participation Agreement[1] entered into with the DMA. The debtor and the DMA executed a Provider Agreement that became effective on February 1, 2000. Prior to that date, an Agreement executed in October 1994, was in effect. For the purposes of the matter currently before the court, there is no material difference in the terms of the two agreements.

8. Pursuant to the Provider Agreement with the debtor, the DMA makes estimated payments to the debtor throughout each fiscal year for claims for Medicaid services rendered. The Provider Agreement permits the DMA to recover overpayments, penalties, or invalid payments due to errors of the provider and/or the DMA and its agents. A final cost report is submitted at the end of each fiscal year, and overpayments and underpayments are reconciled at that time.

9. Reconciliations have shown that the debtor was overpaid for Medicaid services in 1998 and 1999; the debtor was underpaid for Medicaid services in 1991 and 2000. Pursuant to a pre-petition repayment schedule requested by the debtor and dated March 1, 2000, the debtor repaid $1,872.00 in interest and $41,585 in principal. The remaining amount owed by the debtor to the DMA for net overpayments is $44,652.00.

10. The DMA seeks to recoup this $44,652.00 in net pre-petition overpayments from the years 1998 and 1999 against post-petition Medicaid reimbursement payments.

*Discussion*

11. North Carolina's Medicaid Program is based on federal law and funded in part by federal funds. *See* 42 U.S.C.A. § 1396 *et seq.*; N.C. Gen. Stat. § 108A–25; § 108A–54 (2001). The federal Medicaid system provides for installment payments to the states followed by adjustments to reflect overpayments and underpayments.[2]

---

1. The parties refer to the Medicaid Participation Agreements at issue here as "Provider Agreements," and the court will do so as well.

2. Federal regulations do not require states to repay overpayments made to health care providers when those amounts have become uncollectible because the provider has declared bankruptcy or gone out of business. 42 C.F.R. §§ 433.312(b); 433.318 (2002).

42 U.S.C.A. § 1396b(d); 42 C.F.R. § 447.30 (2002) (providing for withholding the federal share of payments to Medicaid providers to recover Medicaid overpayments). Mirroring this scheme, the State's Administrative Code requires the State to recoup overpayments made to health care providers by the DMA. N.C. ADMIN. CODE tit. 26, r. 26G.0707 (2001). In accordance with these federal and state laws and regulations, recovery for overpayments is provided for in the Provider Agreement between the debtor and the DMA in this case.

■ 12. Bolstering these statutory provisions for recoupment is the common law recoupment right that may be asserted in bankruptcy. *See Reiter v. Cooper*, 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). The Supreme Court has recognized that recoupment is appropriate in bankruptcy cases as a counterclaim arising from the *same transaction* between the debtor and a non-debtor party. *Id.* (emphasis added). Two requirements must be met for recoupment to be allowed: an overpayment must have been made, and both the creditor's claim and the amount owed the debtor must have arisen from a single contract or transaction. *In re Kosadnar*, 157 F.3d 1011, 1014 (5th Cir.1998). Because funds subject to recoupment are not the debtor's property, the automatic stay imposed upon the filing of a bankruptcy petition does not bar recoupment. *In re Malinowski*, 156 F.3d 131 (2d Cir.1998). Instead, the trustee in bankruptcy takes the estate property subject to any recoupment rights. *In re Holford*, 896 F.2d 176, 178 (5th Cir.1990) (citation omitted); *In re Madigan*, 270 B.R.

749, 754 (9th Cir. BAP 2001). The equitable doctrine of recoupment is not limited to pre-petition claims; therefore, recoupment "may be employed to recover across the petition date." *Sims v. U.S. Dep't of Health and Human Serv. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 (9th Cir.2000).

■ 13. Because both the Medicare and Medicaid Programs provide for the recovery of overpayments, common law recoupment claims are a recurring theme in bankruptcy cases involving health care providers. *See, e.g., TLC Hosps.*, 224 F.3d 1008; *United States v. Consumer Health Serv. of Am., Inc.*, 108 F.3d 390 (D.C.Cir. 1997); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065 (3d Cir.1992). However, the Circuit Courts that have addressed this issue have employed different analytical approaches and adopted differing definitions of what constitutes the "same transaction" for the purposes of recouping overpayments. *Compare TLC Hosps.*, 224 F.3d at 1012 (holding that the "distinctive Medicare system of estimated payments and later adjustments" met the court's understanding of a single transaction), *and Consumer Health Serv.*, 108 F.3d at 394 (holding that the federal Medicare statute's provision for adjustments for prior overpayments was dispositive on the issue of recoupment), *with University Med. Ctr.*, 973 F.2d at 1081–82. (holding that each audit year constituted a single transaction for purposes of recouping Medicare overpayments from a bankrupt health care provider).

14. The Fourth Circuit has not addressed this issue.[3] Two recent decisions

---

**3.** While the Fourth Circuit has not addressed recoupment claims for overpayments to health care providers, a bankruptcy court decision that denied recoupment for overpayment of disability payments made to a debtor

before bankruptcy was allowed to stand on appeal. *See In re Thompson*, 182 B.R. 140 (Bankr.E.D.Va.1995), *aff'd per curiam*, 92 F.3d 1182 (4th Cir.1996) (unpublished table decision). Other courts have distinguished

in this district, however, did address recoupment claims for Medicaid overpayments made to health care providers who subsequently filed for Chapter 11 protection. *See In re Colonial Health Investors, LLC,* No. 00–51124 (Bankr.W.D.N.C. Oct. 16, 2001), *appeal docketed,* No. 5:01CV–187–V (W.D.N.C. Oct. 30, 2001); *In re Quality Link–Bertie, LP,* No. 00–51125 (Bankr.W.D.N.C. Oct. 16, 2001), *appeal docketed,* No. 5:01CV186–V (W.D.N.C. Oct. 30, 2001). The decisions in these cases were based on the reasoning of the Third Circuit's decision in *University Med. Ctr.* and concluded that each audit year constituted a single transaction.[4] In reaching these conclusions, the court distinguished the D.C. Circuit's opinion in *Consumer Health Serv.* by noting that it dealt with federal statutes implementing the federal Medicare Program rather than with the State's implementation of its Medicaid Program. However, this court is not persuaded that this is a distinction of any substance. While states are not required to participate in the Medicaid Program, they must, once accepted into the program, comply with the federal Medicaid statute and regulations. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Ultimately the implementation of the Medicaid Program is controlled by federal regulations.

15. As noted above, recovery for overpayments is explicitly called for in the federal law that created the Medicaid Program and in corresponding State statutes and regulations. However, to allow recoupment, the court must find that the State's recoupment claim arose from the "same transaction" as the overpayment. *Reiter,* 507 U.S. at 265 n. 2, 113 S.Ct. 1213. While a continuous commercial relationship characterized by multiple occurrences does not necessarily constitute one transaction, this court finds that the distinctive Medicare and Medicaid systems of estimated payments and later adjustments do constitute a single transaction for recoupment purposes. *TLC Hosps.,* 224 F.3d at 1012. Such an exchange of funds may stretch over an extended period of time, reflecting a continuous balancing process between the parties. *Id.* Nevertheless, Congress has indicated that a hospital provider's stream of services is to be considered one transaction for the purposes of any claim the government has against the provider. *Consumer Health Serv.,* 108 F.3d at 395. This relationship is not analogous to multiple, separate equipment purchases from a single supplier—which are

claims made by individual debtors such as the one in *Thompson* from recoupment claims based on overpayments. *See, e.g., In re Malinowski,* 156 F.3d at 135 (denying the State's claim for recoupment for overpayments of unemployment insurance benefits made to a Chapter 13 debtor stating that it could not "stretch the requirement of a single transaction ... to a lifetime government insurance scheme"); *Lee v. Schweiker,* 739 F.2d 870, 876 (denying recoupment for pre-petition overpayments of Social Security benefits noting that courts generally take a different approach in dealing with government benefits paid to individuals). Therefore, the court does not believe that the Fourth Circuit's affirmation of the bankruptcy court's denial of recoupment in *Thompson* is dispositive of the issue in this case, nor predictive of that court's approach to the issues presented here.

**4.** Subsequent to denying the State's recoupment claims, the court issued orders in both *Colonial Health Investors* and *Quality Link–Bertie* concluding that the Provider Agreements at issue were executory contracts, and that pursuant to 11 U.S.C. § 365, the debtors would have to cure any monetary defaults in order to assume those agreements. Although based on a different theory, the results in those cases are the same as in the case here in that the DMA would be reimbursed for overpayments. However, in both *Colonial Health Investors* and *Quality Link–Bertie,* the court found that the DMA had waived monetary cures.

clearly separate transactions. Instead, the DMA's relationship with a provider hospital is the hospital's lifeblood, particularly in the case of a rural hospital such as the debtor. This relationship contemplates a reliable, uninterrupted flow of funds essential to the hospital's operations, subject to annual audit and adjustment, but always continuing to flow. It is—by agreement and by practical operation—one continuous transaction. This reasoning, as articulated by the Ninth Circuit and the District of Columbia Circuit, supports recoupment for overpayments across different cost years. *Id.* at 395; *TLC Hosps.*, 224 F.3d at 1012.

16. In contrast, the Third Circuit has held that, because the federal Medicare Act regulations contemplate an annual account reconciliation, each audit year constitutes a single transaction for purposes of recouping overpayments.[5] *University Med. Ctr.*, 973 F.2d at 1081–82. The Third Circuit stated that to find that the ongoing relationship with the health care provider justified recoupment for pre-petition overpayments from post-petition advances would be to "contort the [recoupment] doctrine beyond any justification for its creation." *Id.* at 1082; *contra Consumer Health Serv.*, 108 F.3d at 395 (remarking that an audit is only a snapshot in time and is not relevant to determining what constitutes a transaction).

17. Here, the court is persuaded by the arguments presented in *Consumer Health Serv.* and *TLC Hosps.* and adopts the reasoning of those decisions. The court recognizes that these cases dealt specifically with Medicare—not Medicaid—recoupment, but the court concludes that this is not a significant distinction for several reasons. The federal law that created the Medicaid Program and engendered the State Medicaid Program provided for recoupment of overpayments made to the States. In accordance with the requirements for implementing Medicaid in this State, North Carolina statutes and regulations provide for recoupment of overpayments made to health care providers. The continuous balancing process outlined in the parties' Provider Agreement is based on these federal and state law provisions. Therefore, application of the rules from *Consumer Health Serv.* and *TLC Hosps.* requires a holding that the ongoing stream of services, advances, and reconciliations constitutes a single transaction, and that recoupment be allowed in this case.

18. In ruling to allow recoupment, the court notes that other bankruptcy courts have allowed recoupment for overpayments for Medicare and Medicaid services. *See, e.g., In re AHN Homecare, L.L.C.,* 222 B.R. 804 (Bankr.N.D.Tex.1998); *In re Southern Inst. for Treatment & Evaluation, Inc.,* 217 B.R. 962 (Bankr.S.D.Fla. 1998); *In re CDM Management Serv., Inc.,* 226 B.R. 195 (Bankr.S.D.Ind.1997); *In re Heffernan Memorial Hosp. Dist.,* 192 B.R. 228 (Bankr.S.D.Cal.1996); *but see, e.g., In re Sun Healthcare Group, Inc.,* 245 B.R. 779 (Bankr.D.Del.2000); *In re Healthback,* 226 B.R. 464 (Bankr. W.D.Okla.1998); *In re St. Francis Physician Network,* 213 B.R. 710 (Bankr. N.D.Ill.1997). Directly on point here is the *CDM Management Serv.* decision, which involved a state agency's attempt to

---

**5.** The *University Med. Ctr.* ruling actually reflects a middle position. *In re Healthback, L.L.C.,* 226 B.R. 464, 478 n. 20 (Bankr. W.D.Okla.1998). The Third Circuit did not hold that each separate and discrete provision of service and corresponding payment equates to one transaction. *Id.* Nor did it find that the continuous open-ended relationship of advance payments followed by reconciliations constitutes a single transaction. *Id.* Instead, it focused on the cost year in defining the boundary for separate transactions. *Id.* at 478.

recoup for pre-petition Medicaid advances. 226 B.R. at 197. Recoupment was allowed pursuant to a single, continuing provider agreement that was still in effect. *Id.* (distinguishing the Third Circuit's holding in *University Med. Ctr.*). As noted above, a similar agreement is present in the case at bar.

19. Additionally, the court holds that recoupment is appropriate in this case based on equitable considerations. The Medicaid system of advance payments for estimated costs has maintained the debtor hospital's cash flow.[6] *TLC Hosps.*, 224 F.3d at 1014. Because overpayments are inherent to the Medicaid system, it is fair to adjust for them regardless of whether a bankruptcy has intervened. *Id.* Moreover, recoupment is also proper because the excess monies advanced to the debtor are not part of the bankruptcy estate. *In re Holford*, 896 F.2d at 178. Allowing recoupment, therefore, prevents the debtor from benefitting from the ongoing Provider Agreement while rejecting its burdens. *See In re Tidewater Mem'l Hosp.*, 106 B.R. 876, 884 (Bankr.E.D.Va.1989) (citations omitted).

20. Public policy considerations also support allowing recoupment in this case. The DMA does not operate the Medicaid Program for its own interests, but rather administers public funds to assist in making health care services available to those who could not otherwise afford them. *See In re Tri County Home Health Serv.*, 230 B.R. 106, 113 (Bankr.W.D.Tenn.1999). Likewise, the Medicaid Program was not instituted for the purpose of benefitting health care providers. *Id.* at 114. The business benefit that the debtor derives from participating in the Medicaid Program is incidental to the Program's pur-

pose as a health insurance system. *Id.* Moreover, the relationship between the DMA and the debtor is not an ordinary business relationship; rather the debtor acts as a surrogate in implementing an important governmental social welfare program. *In re Advanced Prof'l Home Health Care, Inc.*, 94 B.R. 95, 97 (E.D.Mich.1988). Treating the DMA as an ordinary creditor would distort this unique relationship. *Id.* While the court must necessarily consider a broad range of interests in bankruptcy cases, these public policy concerns support the court's decision to permit the State to recoup pre-petition overpayments from the debtor.

*Conclusion*

21. For the reasons stated above, the court concludes that the State may properly assert its right to recoup pre-petition overpayments of Medicaid claims from the debtor.

It is, therefore, ORDERED that the State is entitled to recoup pre-petition overpayments of Medicaid claims from funds owing the debtor post-petition.

6. A contrary view is that allowing recoupment "rewards the recouping creditor for being lucky enough to have had an uncompleted contract at the date of bankruptcy." *In re St. Francis Physician Network*, 213 B.R. at 720.