# United States Court of Appeals
## For the First Circuit

No. 03-1933

IN RE HOLYOKE NURSING HOME, INC.,
Debtor,

HOLYOKE NURSING HOME, INC.,

Appellant,

v.

HEALTH CARE FINANCING ADMINISTRATION,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, Senior U.S. District Judge]

Before

Selya, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

Paul R. Salvage, with whom Justin H. Dion and Bacon & Wilson, P.C. were on brief for appellant.
Eugene B. Berman, J.D., Kerry David Strayer, and Kamberg, Berman, P.C. on brief for Official Unsecured Creditors' Committee.
Karen L. Goodwin, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

June 8, 2004

**CYR, <u>Senior Circuit Judge</u>**.  Chapter 11 debtor Holyoke Nursing Home, Inc. ("Holyoke") and its official unsecured creditors' committee challenge a bankruptcy court ruling which awarded summary judgment to the Health Care Financing Administration ("HCFA") on Holyoke's adversary proceeding complaint that HCFA's postpetition efforts to collect prepetition Medicaid overpayments to Holyoke either constituted preferential transfers or violated the automatic stay.  We affirm the judgment.

**I**

**<u>BACKGROUND</u>**

In 1990, Holyoke became a participant in the Medicare Reimbursement Program pursuant to a Provider Agreement whereby HCFA periodically reimburses health care providers like Holyoke for the estimated costs of services they have provided to Medicare patients, 42 U.S.C. § 1395g(a), subject to an annual audit aimed at determining the reasonableness of the costs of those services, id. § 1395x(v)(1)(A).  In the event HCFA determines that the costs of a provider's past reimbursement requests were either overstated or understated, HCFA is authorized by statute to make "necessary adjustments [to the provider's current reimbursement requests] on account of previously made overpayments or underpayments."  Id. § 1395g(a); 42 C.F.R. §§ 405.1803(c), 405.371(a)(2), 405.373, 413.64(f).

In 2000, HCFA determined that it had overpaid Holyoke

-2-

$373,639 for cost years 1997 and 1998, and proceeded to deduct a portion of the overpayment and interest – viz., $177,656.25 – from Holyoke's pending reimbursement requests for cost-year 2000. In late 2000, Holyoke filed a voluntary chapter 11 petition, and thereupon commenced the instant adversary proceeding against HCFA, contending that HCFA's prepetition deductions ($99,965.97) constituted voidable preferential transfers, see 11 U.S.C. § 547(b), and that its postpetition deductions ($77,690.28) were effected in violation of the automatic stay, see id. § 362(a)(7).

In due course, the bankruptcy court entered summary judgment for HCFA, holding that the HCFA deductions from current reimbursement requests were in the nature of recoupment, and constituted neither voidable preferences nor violations of the automatic stay. In re Holyoke Nursing Home, Inc., 273 B.R. 305, 312 (Bankr. D. Mass. 2002). The district court denied Holyoke's intermediate appeal in an unpublished opinion.

## II

### DISCUSSION

The lone issue on appeal – one of first impression in this circuit – is whether the HCFA deductions for a portion of the 1997-98 overpayments it made to Holyoke are more akin to a setoff, whose collection normally is barred by the automatic stay, see 11 U.S.C. § 362(a)(7) (staying "the setoff of any debt owing to the debtor that arose before the commencement of the [bankruptcy]

-3-

case"), or to a recoupment, which normally is not barred. <u>See</u> <u>United Structures of Am., Inc.</u> v. <u>G.R.G. Eng'g, S.E.</u>, 9 F.3d 996, 999-1000 (1st Cir. 1993); <u>see</u> <u>also</u> <u>Malinowski</u> v. <u>N.Y. State Dep't of Labor</u> (<u>In re Malinowski</u>), 156 F.3d 131, 133 (2d Cir. 1998). As the conclusions of law entered by the bankruptcy court rest upon its construction of the Medicare Act and the Bankruptcy Code, our review is <u>de</u> <u>novo</u>. <u>See</u> <u>In re Cumberland Farms, Inc.</u>, 284 F.3d 216, 224 (1st Cir. 2002).

The pertinent distinction between a setoff and a recoupment is whether the debt owed the creditor (<u>viz.</u>, HCFA) arose out of the "same transaction" as the debt the creditor owes the debtor. For example, if A were to buy a truck worth $1000 from B, but A finds that he must expend $100 to put the truck back into working condition, A might send B a check for only $900, rather than pay B $1000 and await a $100 refund from B. The $100 A recovers by deducting it from the amount he owes B constitutes a recoupment because the reciprocal obligations arose out of the same transaction, <u>viz.</u>, the purchase-sale of the truck. Had B filed for bankruptcy protection, A could recoup the $100 prepetition debt from B without violating the automatic stay because "it would be <u>inequitable</u> for [B] to enjoy the benefits of that transaction without also meeting its obligations." <u>Univ. Med. Ctr.</u> v. <u>Sullivan</u> (<u>In re Univ. Med. Ctr.</u>), 973 F.2d 1065, 1081 (3d Cir. 1992) (emphasis added). Thus, in essence the recoupment doctrine

constitutes an equitable exception to the Bankruptcy Code § 362(a)(7) prohibition against offsetting reciprocal debts.

However, were A to buy the same truck from B, but instead of sending a $1000 check to B, sends a $900 check (deducting the $100 B still owes him for a bicycle A sold B earlier), the $100 which A has deducted constitutes a setoff because the mutual obligations did not arise out of the same transaction, but from different transactions, <u>viz.</u>, the sale of the bicycle and the sale of the truck. Upon the intervention of B's bankruptcy proceeding, Bankruptcy Code § 362(a)(7) would prohibit A from effecting such a deduction, and A's claim for $100 would be collectible (if at all) through the normal distributive mechanisms prescribed by the Bankruptcy Code. See <u>United Structures</u>, 9 F.3d at 999-1000.

Neither the Medicare statute, the Bankruptcy Code, nor their respective legislative histories expressly treats the issue before us, and other courts of appeals have split on the issue. Holyoke relies upon <u>In re University Medical Center</u>, 973 F.2d 1065 (3d Cir. 1992), which held that HCFA's deduction of these Medicare overpayments constituted a setoff, rather than a recoupment. The court there reasoned that since HCFA annually pays providers only for medical services provided in the current cost year, each annual payment constitutes a distinct and segregable "transaction," and that the offsets HCFA effected in order to recover overpayments HCFA had made in prior "cost years" – and which necessarily were

paid for entirely _different_ medical services – did not arise from the "same transaction" as the payments made to cover the provider's current cost-year expenditures. Id. at 1081-82. The Third Circuit is the only court of appeals which has adopted this rationale to date. In United States v. Consumer Health Services of America, Inc., 108 F.3d 390 (D.C. Cir. 1997), and In re TLC Hospitals, Inc., 224 F.3d 1008 (9th Cir. 2000), the District of Columbia Circuit and the Ninth Circuit have held that recoveries of these Medicare overpayments relating to previous cost years constitute transactions in the nature of recoupment. These courts note that subsection 1395g(a) does not compartmentalize HCFA's liability for provider services into a year-to-year determination, but that it expressly defines and modifies HCFA's liability for the provider's current cost-year services as the provider costs incurred in that year "with necessary adjustments on account of previously made overpayments or underpayments." See Consumer Health Servs., 108 F.3d at 394. Thus, "Congress rather clearly indicated that it wanted a provider's _stream_ _of_ _services_ to be considered _one_ _transaction_ for purposes of any claim the government would have against the provider." Id. at 395 (emphasis added); see also TLC Hosps., 224 F.3d at 1012; In re Slater Health Ctr., Inc., 306 B.R. 20, 25 (D.R.I. 2004). Moreover, the interpretation favored by the District of Columbia Circuit and the Ninth Circuit has been embraced by the overwhelming majority of district and bankruptcy

-6-

courts nationwide which have ruled to date.

We likewise accept the majority view, and hold that the HCFA recovery of the $177,656.25 in overpayments previously made to Holyoke constituted a transaction in the nature of a recoupment, rather than a setoff. As such, it was neither a voidable preferential transfer nor a violation of the automatic stay. Both the Medicare statute and the provider agreement – by contemplating HCFA's payment of estimated costs, corrective audits, and retroactive adjustments or partial adjustments for overpayments and underpayments in determining HCFA's net liability for current cost-year services – strongly indicate that the contractual relationship between HCFA and Holyoke constitutes one, ongoing, integrated transaction.[1]

Holyoke further contends that, even if HCFA's overpayment adjustments constitute recoupments, recoupment is an equitable doctrine, and therefore the case should be remanded to the bankruptcy court to determine the appropriate equitable balance to be struck as between itself and HCFA. Holyoke notes, for instance,

---

[1]In the alternative, HCFA argues that its deductions for past overpayments do not implicate the automatic stay, because § 1395g(a) defines HCFA's current liability to Holyoke as the amount of Holyoke's current cost-year expenditures less any past overpayments. Thus, the HCFA overpayments never became either Holyoke's property or property of its chapter 11 estate. Therefore, these HCFA deductions could not be considered a collection action involving property of the estate against which the automatic stay is designed to forfend. As we conclude that these HCFA deductions were recoupments, supra, we need not address the alternate argument advanced by HCFA.

that such recoupments for prepetition overpayments may either cut off or drastically reduce a bankrupt provider's most prominent cash flow, thereby diminishing the prospects for a successful chapter 11 reorganization, and jeopardizing the availability of healthcare to Medicare recipients.  Holyoke argues, on the other hand, that HCFA will not be deprived of all recovery, but likely will be able to recover (albeit partially) on its overpayment claims under Holyoke's chapter 11 Plan.

We perceive no need for equitable balancing.  First, the recoupment doctrine is equitable for the very reason that "it would be <u>inequitable</u> for [Holyoke] to enjoy the benefits of [the same] transaction without also meeting its obligations."  <u>Univ. Med. Ctr.</u>, 973 F.2d at 1081 (emphasis added).  Thus, HCFA was <u>overcharged</u> for the services provided by Holyoke in 1997 and 1998, and in equity, Holyoke should not be allowed to retain the windfall. Moreover, to allow these overpayments to become property of the Holyoke bankrupt estate would mean that its estate might apply a portion of those government-provided funds to satisfy Holyoke's other debts, thus violating the manifest congressional intent that HCFA expend such funds only to defray the costs of services provided to Medicare beneficiaries.  <u>Cf.</u>, <u>e.g.</u>, <u>In re LAN Tamers, Inc.</u>, 329 F.3d 204, 212 (1st Cir.) (noting that inclusion of government funds as "property of estate" would divert those funds to the other general creditors of the debtor, rather than to

the purpose plainly intended by Congress), <u>cert.</u> <u>denied</u>, 124 S. Ct. 808 (2003).

Second, even assuming <u>arguendo</u> that further equitable balancing is permissible, the equitable powers of the bankruptcy court do not accord it "a roving commission to do equity," <u>In re Ludlow Hosp. Soc'y, Inc.</u>, 124 F.3d 22, 27 (1st Cir. 1997) (citation omitted), nor "authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties." <u>Id.</u> (quoting <u>Official, Unsecured Creditors' Comm.</u> v. <u>Stern</u> (<u>In re SPM Mfg. Corp.</u>), 984 F.2d 1305, 1311 (1st Cir. 1993)). As we conclude that Congress contemplated that the Medicare provider agreements would constitute a single, ongoing, and integrated transaction, the equitable powers of the bankruptcy court do not entitle it to second-guess Congress's implicit policy choices. Both by statute and by contract, the HCFA has the unqualified right to recoup these overpayments <u>in</u> <u>full</u>, and to return the funds to the public fisc, where they can be used to fund other facilities providing care to Medicare beneficiaries. In our view, public policy would be ill-served by permitting insolvent providers – like Holyoke – a windfall at the expense of other Medicare providers which have managed their facilities prudently to avoid chapter 11. Accordingly, we conclude that a remand to the bankruptcy court for a balancing of the equities is not warranted.

**AFFIRMED**.