Wheeler v. Gidley                          04-CV-227-SM   08/29/05
                      UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


Michael Wheeler and
Hampton Harbor Boatworks,
      Plaintiffs

      v.                                    Civil No. 04-cv-227-SM
                                            Opinion No. 2005 DNH 122
Daniel J. Gidley and
Town of Hampton,
      Defendants


                            O R D E R


      This case, removed from the New Hampshire Superior Court,

arises out of the arrest and prosecution of Michael Wheeler,

president of Hampton Harbor Boatworks, on charges of receiving

stolen property.  Wheeler has asserted a claim against Daniel

Gidley of the Hampton Police Department,[1] under 42 U.S.C. § 1983

(Count II), along with state claims of malicious prosecution

(Count I), intentional infliction of emotional distress (Count

III), negligence (Count IV), defamation (Count V), invasion of

privacy (Count VI), and a request for enhanced compensatory

_____

      [1] Gidley now serves as a Lieutenant in the Hampton Police
Department, but because he was serving as a detective while
performing the activities that gave rise to this suit, he will be
referred to as Detective Gidley.

damages (Count VII).  Before the court is defendants' motion for summary judgment.  Plaintiffs object.  For the reasons given, defendants' motion for summary judgment is granted in part, and the state claims are remanded.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists."  Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).  "Once the movant has served a properly supported motion asserting entitlement to summary judgment, the burden is on the nonmoving party to present evidence showing the existence of a trialworthy issue."  Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  When ruling on a party's motion for summary

2

judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

## Background

On September 18, 2000, Wheeler was arrested by Detective Gidley and charged with two counts of receiving stolen property, namely "a mercruiser alpha one outdrive valued in excess of $1,000.00, the property of Charles Noble" and "a mercruiser bravo outdrive valued in excess of $1,000.00, the property of Denis Raymond."  Both complaints, dated August 2, 2000, were sworn out by Detective Gidley.  After a hearing, both charges were dismissed by a state court judge for want of probable cause.

In a letter dated January 10, 2001, Detective Gidley asked Thomas Reid of the Rockingham County Attorney's Office to review the case against Wheeler and determine whether it was worth pursuing.  The prosecutor presented the case and, on June 21,

3

2001, the grand jury returned four indictments against Wheeler, each charging him with receiving stolen property. The indictments charged Wheeler with receiving: (1) "a Mercruiser Outdrive[,] the property of Denis Raymond," (2) "a Mercruiser Outdrive[,] the property of Charlie Noble," (3) "a Mercruiser Outdrive[,], the property of Robert Conrad," and (4) "a boat trailer dolly, boat stands, anti-freeze, and electronics[,] the property of American Marine." After the indictments were handed down, Wheeler was arrested again.

Wheeler initially pled nolo contendere to the charges against him, but subsequently withdrew those pleas. Then, in exchange for the State's nol prossing the four felony charges, Wheeler pled guilty to two substituted misdemeanor theft charges. Wheeler again had second thoughts, and successfully moved to vacate those guilty pleas. The State reinstated the felony indictments concerning the Noble and Raymond outdrives, but subsequently nol prossed those two charges, shortly before trial, based upon a determination that the evidence in the case precluded the State from proving that Wheeler "acted 'knowingly'

4

when he received the 'Nobel' and 'Raymond' outdrives."  (Pls.'
Obj. to Summ. J., Ex. G.)

The investigation that led to the charges against Wheeler
began in December of 1999 when a confidential informant told
Detective Gidley that "Wheeler possessed a number of items that
were stolen from American Marine in Newburyport, Massachusetts"
and "that the items had been taken by a 'Butch' McCauley who
worked at American Marine, and that Wheeler had actually gone to
American Marine and pointed out items he would like."  (Defs.'
Mot. Summ. J., Ex. E (Gidley Aff.), ¶ 4.)

In response, Detective Gidley contacted Inspector Brian
Brunault of the Newburyport Police Department to determine
whether American Marine had reported any thefts.  (Gidley Aff. ¶
5.)  Inspector Brunault, in turn, contacted Richard Vorias, the
owner of American Marine.  In a letter dated December 10, 1999,
Vorias informed Inspector Brunault that a number of items had
gone missing from his boatyard over the previous four months.
Vorias's list of missing items included, among other things: (1)
an "Alpha I Mercruiser outdrive for an 8 cylinder engine;" (2)

"[t]wo (2) boat trailer dollies;" (3) "[e]ight (8) to sixteen (16) plus Brownell boat stands;" (4) a "Loran navigation unit;" (5) a "[s]tereo/CD;" (6) a "[p]ortable VHF by Standard;" (7) "[a]ssorted tools; power and hand;" and (8) "15 (fifteen) to 20 (twenty) cases of non-tox anti-freeze." (Defs.' Mot. Summ. J., Ex. F (Brunault Aff.), Attach. 1.) The outdrive that Vorias listed had previously been reported stolen by one of Vorias's customers, Robert Conrad. Based upon Vorias's letter, Inspector Brunault informed Detective Gidley that a number of items were, indeed, missing from the American Marine boatyard.

Detective Gidley contacted Vorias directly and learned that Vorias had spoken with Wheeler, who had offered to give Vorias several items that he (Wheeler) had purchased from Vorias's former employee, Robert McCauley. (Gidley Aff. ¶ 6.) By letter dated March 3, 2000, Vorias informed Inspector Brunault that Wheeler had turned over several items: (1) "[a] Doral boat Mercruiser outdrive;" (2) "[a] boat trailer dolly;" and (3) "[s]everal boat stands." (Brunault Aff., Attach. 2.) However, the outdrive that Wheeler turned over to Vorias was not the one Vorias reported as missing from his boatyard.

6

Using the serial number from the outdrive that Wheeler gave Vorias, Inspector Brunault traced that outdrive to Charles Noble, owner of Hampton River Marina. Inspector Brunault then seized the outdrive, informed Noble that he had it, and encouraged Noble to file a report with the Hampton police, reporting the outdrive as stolen. (Brunault Aff. ¶ 9.) Noble did so, on April 5, 2000. In his report to Officer Henderson of the Hampton Police Department, Noble stated that the outdrive "had been stole[n] from his boat between the winter of 1997 and the spring of 1998." (Defs.' Mot. Summ. J., Ex. G (Henderson Aff.) ¶ 2). Noble also told Officer Henderson that the missing outdrive had a value of $2,500. (Id.)

At some point, Wheeler contacted Inspector Brunault in an effort to recover the Noble outdrive. (Brunault Aff. ¶ 10.) Inspector Brunault told Wheeler that the outdrive in question had been stolen from Noble. (Id.) Wheeler responded with a letter, dated May, 19, 2000, in which he explained that he had purchased that outdrive on August 25, 1999, for $400, from Robert McCauley, and described its condition: "Unit had a broken skeg and was

blued from overheating, seals were leaking oil." (Brunault Aff., Attach. 3.)

On May 31, 2000, Detective Gidley went to Hampton Harbor Boatworks and photographed several outdrives. He later ran their serial numbers and learned that one of the outdrives in Wheeler's shop was registered to Denis Raymond and had been reported stolen. With consent from Wheeler, Detective Gidley removed the outdrive registered to Raymond. At that time, Wheeler told Detective Gidley that the Raymond outdrive was in his shop for repairs. A customer brought it in and, Wheeler told Gidley, his bookkeeper would pull the work order and notify Detective Gidley of the customer's identity. Wheeler's bookkeeper, Dawn Churchill, left telephone voicemail messages to inform Detective Gidley that the information was available for his inspection, but Gidley never returned Churchill's telephone calls, and never came by the shop to examine the work order.

Based upon the foregoing, Detective Gidley swore out two warrants against Wheeler, charging him with receiving stolen property, namely the Noble outdrive and the Raymond outdrive.

8

Those two charges were also dismissed, based upon a judicial determination that Detective Gidley had no probable cause to arrest Wheeler. Subsequently, Wheeler was indicted on four counts of receiving stolen property, two of which charged him with receiving the Noble and Raymond outdrives. All four charges were ultimately nol prossed. This suit followed.

In Count II, brought under 42 U.S.C. § 1983, Wheeler asserts that Detective Gidley violated his federal constitutional right to be free from unreasonable seizure and false accusation.

## Discussion

Defendants move for summary judgment on all counts. Plaintiffs object, categorically, but also argue that, in the event of a decision favorable to defendants on the § 1983 claim, the court should decline to exercise supplemental jurisdiction over their state claims.

Wheeler's § 1983 claim is that "Gidley, while acting under the color of law, denied [him] his Constitutional rights to be free from unreasonable seizure and false accusations." Count II

does not indicate whether plaintiffs are challenging one or both of Wheeler's arrests. Defendants move for summary judgment, arguing that the undisputed factual record demonstrates that Gidley had probable cause to arrest Wheeler and that, even if he did not, he is protected by the doctrine of qualified immunity.

"Section 1983 imposes liability on anyone who, acting under color of state law, deprives a person of any 'rights, privileges, or immunities secured by the Constitution and laws.'" Rio Grande Community Health Ctr., Inc. v. Rullan, 397 F.3d 56, 72 (1st Cir. 2005) (quoting 42 U.S.C. § 1983). However, "the doctrine of qualified immunity protects public officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The framework for considering the defense of qualified immunity

> consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or

10

omission to contravene the discerned constitutional right."

Cox, 391 F.3d at 29-30 (quoting Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)).

Turning to the constitutional right that animates Wheeler's § 1983 claim, the Fourth Amendment, as applied to the States through the Fourteenth Amendment, guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." But, so long as "there is probable cause for an arrest, the Fourth Amendment's prohibition against unreasonable searches and seizures is not offended." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1996)).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v.

Burhoe, 409 F.3d 5, 10 (1st Cir. 2005) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)). The existence of probable cause is determined by considering what the arresting officer knew at the time of the arrest. See Roche, 81 F.3d at 254. "The exact degree of certainty required to establish probable cause is difficult to quantify; it falls somewhere between bare suspicion and what would be needed to justify conviction." Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (citing Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003); Brinegar v. United States, 338 U.S. 160, 175 (1949)) (internal quotation marks and other punctuation omitted).

Here, for Wheeler's arrest to be constitutionally permissible, subject, of course to the defense of qualified immunity, Detective Gidley had to have probable cause to believe, at the time of arrest, that Wheeler had "receiv[d], retain[ed], or dispose[d] of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with a purpose to deprive the owner thereof." N.H. REV. STAT. ANN. ("RSA") § 637:7, I. The applicable statute further provides:

12

The knowledge or belief required for paragraph I is presumed in the case of a dealer who:

> (a) Is found in possession or control of property stolen from 2 or more persons on separate occasions; or
>
> (b) Has received other stolen property within the year preceding the receiving charged; or
>
> (c) Being a dealer in property of the sort received, retained or disposed, acquires it for a consideration which he knows is far below its reasonable value . . .

RSA 637:7, II. The term "'dealer' means a person in the business of buying and selling goods." RSA 637:7, III. "In order for the State to convict on the charge of receiving stolen property, it must prove beyond a reasonable doubt that the property was stolen, that the defendant possessed the property, that he believed the property was stolen, and that he intended to deprive the owners of the property." State v. Stauff, 126 N.H. 186, 189 (1985) (citing RSA 637:7, I, III).

A. The First Arrest

Defendants contend that Detective Gidley had probable cause to believe, at the time he first arrested Wheeler, that Wheeler

13

had received or retained both the Noble outdrive and the Raymond outdrive in violation of RSA 637:7.

The court begins with Detective Gidley's claim of qualified immunity. See Cox, 391 F.3d at 29. Plainly, Wheeler "has alleged facts that show that [Detective Gidley's] conduct violated a constitutional right," id. at 30, because "[t]he Fourth Amendment undoubtedly recognizes the right to be free from unreasonable seizures of the person." Id. (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Moreover, "[t]he right to be free from arrest without constitutionally adequate probable cause is clearly established," Cox, 391 F.3d at 30 (citing Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir. 1987)), which satisfies the second part of the qualified immunity inquiry. See id. Thus, the availability of qualified immunity in this case rests on the third prong of the analysis. "Under that prong, a defendant 'is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest.'" Id. at 31 (quoting Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)).

14

While it is a close question here, I find that a reasonable officer in Detective Gidley's shoes could have believed that he or she had probable cause to arrest Wheeler for receiving stolen property with respect to the Noble outdrive.[2] It was patently reasonable for Detective Gidley to believe that Wheeler possessed the Noble outdrive, as it is undisputed that Gidley knew, among other things, that Wheeler turned over that outdrive to Vorias, presumably believing it was the Conrad outdrive. And it was reasonable for Detective Gidley to believe that the Noble outdrive was stolen, given the report taken by Officer Henderson.[3]

A closer question arises with respect to what a reasonable police officer in Gidley's position would have believed

---

[2] Because Detective Gidley is entitled to qualified immunity with respect to the arrest based upon the Noble outdrive, there is no need to examine the question of probable cause regarding the Raymond outdrive; Gidley's qualified immunity for an arrest based upon the Noble outdrive covers the arrest in toto, for Wheeler's liberty was taken away for a legitimate reason.

[3] The fact that Noble did not report the theft of his outdrive until Inspector Brunault prompted him to do so is troubling, but even so, Detective Gidley was entitled to rely upon Noble's report to support his belief that probable cause existed to believe that the Noble outdrive was stolen property at the time Wheeler possessed it.

concerning Wheeler's knowledge that the Noble outdrive was stolen. When Detective Gidley swore out the complaint against Wheeler, he knew that Noble put the value of his missing outdrive at $2,500, and he knew that Wheeler said he had purchased the outdrive for $400. That juxtaposition is enough to satisfy the statutory presumption, RSA 637:7, II(c), in the limited context of determining whether Detective Gidley is entitled to qualified immunity regarding his probable cause determination, for "all but the plainly incompetent or those who knowingly violate the law" are entitled to protection. Burke v. Town of Walpole, 405 F.3d 66, 77 (1st Cir. 2005) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Plaintiffs point out that Detective Gidley failed to examine the Noble outdrive, when examination would have disclosed its various defects and would have demonstrated that the price Wheeler paid for it, $400, was not "far below its reasonable value."[4]

Wheeler's arrest was likely not supported by probable cause, but that is not the issue here. The standard applicable in

---

[4] Examination would have also shown that when Wheeler repaired and repainted the Noble outdrive, he did not remove or paint over the sticker bearing the serial number.

16

determining whether an officer is immune from claims of false arrest based upon lack of probable cause,[5] precludes a finding that Wheeler's arrest was actionable, because it cannot be said, on this record, that "the unlawfulness of the arrest would have been apparent to an objectively reasonable officer standing in [Detective Gidley's] shoes."  Cox, 391 F.3d at 31 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Limone, 372 F.3d at 44).  That is, Detective Gidley's conduct in this case places him outside the realm of "the plainly incompetent or those who knowingly violate the law."  Burke, 405 F.3d at 77 (citation omitted).  Accordingly, he is entitled to qualified immunity from plaintiffs' claim that Wheeler's first arrest violated his Fourth Amendment rights.

B. The Second Arrest

While it is not perfectly clear, plaintiffs seem also to claim that Wheeler's second arrest, the one resulting from the grand jury indictments, also violated his Fourth Amendment rights

---

[5] As the court of appeals for this circuit has explained the relationship between the standards pertaining to probable cause and qualified immunity, "[q]ualified immunity . . . requires a somewhat lesser showing."  Cox, 391 F.3d at 31.

17

because it was not supported by probable cause. However, "[g]enerally, a grand jury indictment definitively establishes probable cause." Gonzalez Rucci v. INS, 405 F.3d 45, 49 (1st Cir. 2005) (citing Abreu-Guzman v. Ford, 69 F. Supp. 2d 274, 285 (D.P.R. 1999)). While this rule admits of "an exception if law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury," id. (citations omitted), neither plaintiffs' complaint nor their objection to summary judgment may be fairly read as alleging that Detective Gidley knowingly presented false testimony to the grand jury that indicted Wheeler. Accordingly, to the extent plaintiffs assert that the second arrest violated Wheeler's Fourth Amendment rights, defendants are entitled to summary judgment.


### Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 13) is granted as to Count II. Having resolved the only federal question in this case, the court declines to exercise supplemental jurisdiction over the remaining state claims. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st

18

Cir. 1998). The clerk of the court shall enter judgment in accordance with this order, and plaintiffs' state claims are hereby remanded to the New Hampshire Superior Court.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 29, 2005

cc:  Peter G. Callaghan, Esq.
     Brian J. S. Cullen, Esq.