In re HEALTH MANAGEMENT
LIMITED PARTNERSHIP,
Debtor.

No. 03–71681.

United States Bankruptcy Court,
C.D. Illinois.

Dec. 13, 2005.

Sumner Bourne, Gary T. Rafool, Peoria, IL, for Debtor.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The issue before the Court is whether Blue Cross' recovery of overpayments for pre-petition advances from post-petition obligations constitutes recoupment, which is not barred by the automatic stay of 11 U.S.C. § 362, or setoff, which is barred by the automatic stay.

The Debtor, Health Management Limited Partnership ("Health Management"), operated a hospital on the south side of Springfield, Illinois, under the name "Doctors Hospital" for a number of years. Health Management had a contractual relationship with Blue Cross Blue Shield of Illinois, a division of Hospital Service Corporation ("Blue Cross") wherein Health Management provided medical treatment to Blue Cross members in exchange for Blue Cross' payment of certain contractual rates or amounts to Health Management for such treatment. The parties disagree as to whether there was one contract with three programs—Participation Provider Option ("PPO"), Health Maintenance Organization ("HMO") and Point of Service ("POS")—or three separate contracts. They agree on the important point, however, that the contracts or programs were subject to the same general repayment terms.

Following treatment of a Blue Cross patient, Health Management would submit a claim to Blue Cross for the full cost of such treatment. Blue Cross would process all claims submitted by Health Management and issue a weekly check to Health Management for the full amount of the claims less charges for items not covered by Blue Cross such as television charges and deductibles. This figure is referred to as the "Net Covered Charges".

The Net Covered Charges represent the full amount of the covered patient charges for services rendered by Health Management. This figure includes amounts that Health Management is not entitled to keep because it does not account for the percentage or dollar amount of such charges that are not covered by Blue Cross. The amounts due back from Health Management to Blue Cross are known as the "contractual allowances". About two months after the original check, Blue Cross would recover its contractual allowances from a subsequent check which rep-

resented the Net Covered Charges from other Blue Cross patients at the hospital. If the Net Covered Charges were insufficient to fully cover the weekly contractual allowance amount, a $10 check was sent to Health Management and the remaining balance of the Net Covered Charges was credited to an internal account at Blue Cross. These unpaid allowance amounts were added to the weekly contractual allowance amount and were recovered from subsequent Net Covered Charges.

The following hypothetical illustrates how the process worked:

A Blue Cross member went to the hospital and had medical services rendered for which the hospital's standard charge would have been $1,000. According to the Blue Cross discounts negotiated with the hospital, the actual discounted charges for the patient were $650. Blue Cross would process the claim and pay the full $1,000 to the hospital. The $1,000 payment would be in one large check sent by Blue Cross on processed claims to the hospital each week. Although only one check was issued by Blue Cross to the hospital each week, the claims and checks were traceable to a specific patient.

About two months later, Blue Cross would deduct the excess $350 paid on the patient's claim from a later check to the hospital paying other patient claims.

On April 2, 2003, Health Management filed a petition pursuant to Chapter 11 of the Bankruptcy Code. The hospital was open and treating patients at the time of filing, but it ceased operations within two months due to continued financial difficulties. A liquidating Chapter 11 plan was confirmed on September 25, 2003. Health Management never sought to assume or reject the Blue Cross contracts, and Blue Cross never moved to compel Health Man-

agement to assume or reject the contracts with Health Management.

Blue Cross continued to process checks and recover its contractual allowances following the filing of the bankruptcy petition. On April 4, 2003, Blue Cross issued a check to Health Management in the amount of $88,742.75. This figure included $131,000 in processed claims less $42,257.25 in contractual allowances. No claims were processed or checks issued the next week. The contractual allowances exceeded the Net Covered Charges ($23,800 and $61,100) for the next two weeks so $10 checks were issued on April 18, 2003, and April 25, 2003. On May 2, 2003, a check in the amount of $9,872.34 was issued after $57,827.66 in contractual allowances were deducted from $67,700 in Net Covered Charges. Another $10 check was issued on May 9, 2003, when the contractual allowances exceeded the $55,800 in Net Covered Charges. An $89,526.98 check was issued on May 16, 2003, which represented $149,800 in Net Covered Charges less $60,273.02 in contractual allowances. The $66,868.49 check issued on May 23, 2003, represented $124,900 in net covered charges less $58,031.51 in contractual allowances. A check was not issued on May 30, 2003, because Blue Cross recovered the entire $124,900 in charges instead of issuing the customary $10 check.

On July 11, 2003, Health Management filed a Motion to Show Cause concerning the Blue Cross deductions from the payments to the Debtor from Blue Cross. A hearing was held on July 28, 2003, and the Court entered an Order, which provided as follows:

That the Debtor's Motion is allowed.

That Blue Cross Blue Shield shall cease from setting off any post-petition payments or benefits due Debtor from on or after April 2, 2003, against any

amounts owed Blue Cross Blue Shield by Debtor prior to April 2, 2003; and

Blue Cross Blue Shield shall immediately account and remit to Debtor any withheld post-petition amounts or benefits due Debtor.

A copy of the Order was sent to Blue Cross' general counsel.

Blue Cross sent Health Management two more checks after the entry of this Order. On September 19, 2003, a $10 check was issued after Blue Cross held back $434,890 of the $434,900 in Net Covered Charges. Finally, on January 1, 2004, Blue Cross issued a check for $34,983.20, which represented the difference between $86,124 in Net Covered Charges and $51,140.80 in contractual allowances.

In 2003, Health Management had several secured creditors. Marine Bank of Springfield held the first position security interest in the accounts receivable, including Health Management's Blue Cross receivables. National City Bank held the second position on the receivables. Universal Guaranty Life Insurance Company ("Universal") purchased National City's loans with Health Management and assumed National City's second position on the receivables. Marine collected enough receivables to pay off its loans in late 2003. Therefore, Universal moved up to the first position on the receivables and it is Universal that is the party in interest in this proceeding.

Universal argues that Blue Cross violated the automatic stay and is in contempt of this Court's Order of July 28, 2003, because it set off $188,637.45 of post-petition funds due to Health Management against pre-petition claims. Blue Cross maintains that it did not set off but rather exercised its right of recoupment. Blue Cross admits that it owes Universal $10,100.

This Court discussed setoff and recoupment in *In re Stratman,* 217 B.R. 250, 252 (Bankr.S.D.Ill.1998):

11 U.S.C. § 553 allows a creditor to offset certain mutual debts in a bankruptcy proceeding. In effect, setoff elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor. *In re Cooks,* 157 B.R. 385, 388 (Bankr.S.D.Ohio 1993). Mutuality of claims means that the claims are asserted against the same entity in the same capacity; the mutual claims need not arise in the same transaction. Accordingly, the availability of setoff turns on whether the claims of the creditor and the debtor both arose prepetition or both arose postpetition; a creditor may not set off a prepetition claim against a postpetition obligation. *In re Calstar, Inc.,* 159 B.R. 247 (Bankr.D.Minn.1993).

Unlike setoff, recoupment does not appear in the Bankruptcy Code. However, the Supreme Court has recently observed that courts have permitted the use of recoupment in bankruptcy cases. *Reiter v. Cooper,* 507 U.S. 258, 113 S.Ct. 1213, 1218, n. 2, 122 L.Ed.2d 604 (1993). Recoupment has some of the characteristics of setoff. Both setoff and recoupment have a common origin and are equitable in nature. Recoupment, however, is more limited in its application. Under the doctrine of recoupment, a defendant can meet a plaintiff's claim with a countervailing claim that arose out of the same transaction as the Plaintiff's claim or cause of action, for the purpose of abatement or reduction of such claim. *In re Klingberg Schools,* 68 B.R. 173, 178 (N.D.Ill.1986), aff'd 837 F.2d 763 (7th Cir.1988); 4 Collier on Bankruptcy 553.03, at 553–17 (15th ed.1994). There are two limitations on the doctrine of recoupment: First, the claims must arise from a single contract

or transaction. *In re American Sunlake Ltd. Partnership*, 109 B.R. 727, 730 (Bankr.W.D.Mich.1989). Second, there must be some type of "overpayment" whether accidentally made or contractually made. *In re Public Service Co. of New Hampshire*, 107 B.R. 441, 445 (Bankr.D.N.H.1989).

217 B.R. at 252.

In this case, the parties agree that there were overpayments. The issue is whether Health Management's claim for Net Covered Charges and Blue Cross' claim for contractual allowances arose out of a single integrated transaction.

Universal relies on *In re University Medical Center*, 973 F.2d 1065 (3rd Cir. 1992) to support a narrow reading of the "single integrated transaction" requirement. *University Medical Center* involved the government's attempt to recover pre-petition overpayments for 1985 by withholding post-petition Medicare payments from the hospital for services rendered in 1988. The Third Circuit set forth a strict standard for determining the transaction requirements of recoupment:

> For purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, ... does not mean that the two arose from the 'same transaction.' " (citation omitted). Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed. (citation omitted).

*Id.* at 1081. The Court noted that Medicare reconciliation is done on an annual basis and is subject to a distinct annual audit. Therefore, the Court held that the government could not recover pre-petition overpayments in one calendar year from its obligation to pay the hospital in a subsequent calendar year. The Court reasoned that the recovery of a 1985 overpayment was the final act of the transactions that began in 1985, and that the hospital's 1988 post-petition services were not part of the 1985 transactions. *Id.* at 1082.

■ The *University Medical Center* analysis has been rejected by the First, Ninth, and D.C. Courts of Appeal. *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 4 (1st Cir.2004); *In re TLC Hospitals, Inc.*, 224 F.3d 1008, 1013–14 (9th Cir.2000); *U.S. v. Consumer Health Services of America, Inc.*, 108 F.3d 390, 395 (D.C.Cir. 1997). Most district and bankruptcy courts have also rejected the Third Circuit's analysis in *University Medical Center*. *In re Slater Health Center, Inc.*, 306 B.R. 20, 25 (D.R.I.2004); *In re District Memorial Hospital of Southwestern North Carolina, Inc.*, 297 B.R. 451 (Bankr. W.D.N.C.2002); *In re Heffernan Memorial Hospital District*, 192 B.R. 228 (Bankr. S.D.Cal.1996); *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238 (Bankr. S.D.Fla.1994). This Court joins the majority of cases in rejecting the Third Circuit's overly-restrictive requirement that the creditor's claim arise out of the identical transaction as the debtor's claim.

■ The "crucial factor in determining whether two events are part of the same transaction is the 'logical relationship' between the two." *In re TLC Hospitals, Inc., supra,* 224 F.3d at 1012. In determining whether there is a logical relationship, the focus is on the agreement between the parties. *See U.S. v. Consumer Health Services of America, Inc., supra,*

108 F.3d at 395 (key in Medicare case is Medicare statutes). In this case, the agreement between Blue Cross and Health Management contemplated Blue Cross paying the net covered charges. Both parties recognized that this sum was more than Blue Cross actually owed. Two months later, Blue Cross would recover its contractual allowances. This system of payment of the full cost of services followed by a recalculation of what is actually owed and a subsequent adjustment for overpayments indicates one ongoing, integrated transaction. Therefore, Blue Cross' recovery of the overpayments previously made to Health Management constituted a transaction in the nature of recoupment rather than setoff. Accordingly, it did not violate the automatic stay or the Court's Order barring setoff.

Even under the Third Circuit's stricter standard, Blue Cross' recovery of its overpayments would still qualify as recoupment. The Third Circuit relied on Medicare's annual account reconciliation process to define the scope of a single transaction. Thus, overpayments in one year could not be recovered in another year. The agreement in this case did not provide for an annual reconciliation. Instead, the account was reconciled on an ongoing basis with the overpayments recovered about two months after they were made. Thus, the facts in this case satisfy the *University Medical Center* requirement of a single, integrated transaction. Further, the Court finds that it would be inequitable for Health Management to enjoy the benefits of the transaction without having its obligations.

Despite relying on the Medicare case of *University Medical Center*, Universal suggests that the line of Medicare cases is not applicable to the facts in this case because this case involves private insurance. A witness for Universal testified that private insurance is completely different from Medicare and he noted that the cost report in Medicare is done on an annual basis. While there may be differences between Medicare and the private insurance in this case, both programs feature a system of interim payments subject to subsequent adjustments. It is this common characteristic between the programs that makes the Medicare cases helpful in providing guidance to the Court.

For the foregoing reasons, the Court finds that Blue Cross is not in contempt for violating the automatic stay or the Court's Order barring setoff. The Court further finds that Blue Cross is directed to pay Universal the $10,100 that Blue Cross acknowledges is still owed to Universal.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Blue Cross Blue Shield of Illinois, a division of Health Care Service Corporation, did not violate the automatic stay of 11 U.S.C. § 362(a) or the Court's Order of July 23, 2003, when it exercised its right of equitable recoupment.

IT IS FURTHER ORDERED that Blue Cross Blue Shield of Illinois, a division of Health Care Service Corporation, is directed to pay Universal Guaranty Life Insurance Company $10,100 within 30 days of the entry of this Order.